UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JASON RICHARD EIDAM,

    Plaintiff,    Case No. 1:19-cv-978

v.             Honorable Robert J. Jonker

COUNTY OF BERRIEN et al.,

    Defendants.
_____/

## **OPINION**

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment deprivation of property without due process, access to the courts, and deprivation of adequate medical care for failure to treat his tooth claims. The Court will further dismiss Defendant Berrien County from Plaintiff's claim of deprivation of adequate medical care for denying Plaintiff his medication.

**Discussion**

I.       **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Charles Egeler Reception & Guidance Center (RGC) in Jackson, Jackson County, Michigan.  The events about which he complains, however, occurred at the Berrien County Jail, in St. Joseph, Berrien County, Michigan.  Plaintiff sues Berrien County and Sheriff L. Paul Bailey in his official and individual capacities.

Plaintiff alleges a series of discrete events he experienced as a pretrial detainee between August and October 2019.

In August 2019, while incarcerated at Berrien County Jail, Plaintiff broke a tooth when he bit into a rock while eating his meal.  He pushed an emergency button immediately to alert jail staff and requested medical help.  Plaintiff waited two to three hours before a nurse arrived to examine him.  Plaintiff was provided ibuprofen, but his tooth was not repaired.  Plaintiff filed a grievance requesting repair of his tooth, which was denied.  Plaintiff appealed the grievance decision, but Defendant Bailey denied the appeal.

Approximately two months later, in October 2019, Defendant Bailey ordered deputies to remove all books, including Plaintiff's religious texts and his sudoku book, from Dorm 2E where Plaintiff was held.  The reason given for the purge was bed bugs may hide in the books.  Plaintiff alleges, however, that a dog capable of detecting bed bugs had cleared Dorm 2E the day prior.  Exterminators did not treat Dorm 2E, and neither clothes nor linens were exchanged.  Plaintiff's books were not returned, and replacements were not provided.

At some unspecified time, Plaintiff requested a pen, envelope, and stamps to file the instant suit.  Plaintiff was told that, with indigent status, he could receive three stamps each week.  He could purchase a pen and manila envelope only when no longer indigent.  Plaintiff

2

alleges the stamp policy forced him to choose between writing, for example, this court, his attorney in his criminal case, his criminal court, and his wife. Plaintiff further alleges that Defendants refused to cooperate in his efforts to petition for leave in the instant case to proceed *in forma pauperis*.

Additionally, during his detainment with Berrien County, "Defendants[1] have refused to give [Plaintiff] all [his] psych medication" for 120 days. (Compl., ECF No. 1, PageID.5.) Plaintiff alleges that he was not given Adderall, Klonopin, Gabapentin, or Prazosin as prescribed. Instead, "[w]ithout seeing a psychiatrist, doctor or having [Plaintiff's] medical records they felt [Plaintiff] should only get lithium . . . [and] Effexor." (*Id.*) As a result, Plaintiff suffered from seizures, headaches, terror dreams and a manic episode.

Plaintiff seeks $113,002.20 in compensatory damages and $170,000 in punitive damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough

---

[1] The Complaint specifies only two Defendants: Berrien County and Sheriff Bailey. Clearly, Berrien County did not actively refuse Plaintiff his medication. The Court recognizes the implausibility that Sheriff Bailey directly refused Plaintiff his medication every day for 120 days. Plaintiff much more likely meant to describe that sheriff deputies and other staff of the county jail, working under Sheriff Bailey, refused Plaintiff his medication. Nonetheless, the Court will read the pleading as alleging that Sheriff Bailey actively refused Plaintiff his medication.

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff alleges claims arising under the First Amendment for free exercise; the Fourteenth Amendment for deprivation of adequate medical care, deprivation of property without due process, and access to the courts, as well as claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA).

### III. Municipal Liability

Plaintiff sues Berrien County but does not specifically allege any actions taken by the County. Presumably, Plaintiff contends that the County is responsible for the alleged actions of its employees and decisions made by Sheriff Bailey.

A local government such as a municipality or county "cannot be held liable solely because it employs a tortfeasor—or, in other words, a county cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a municipality may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 35-37 (2010) (citing *Monell*, 436 U.S. at 694 (1974)). In a county liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509.

A "policy" includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the policymaker for the county or municipality. *Monell*, 436 U.S. at 690. The Sixth Circuit has explained that a "custom"

> for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law. In turn, the notion of "law" includes deeply embedded traditional ways of carrying out state policy. It must reflect a course of action deliberately chosen from among various alternatives. In short, a "custom" is a "legal institution" not memorialized by written law.

*Claiborne Cty.*, 103 F.3d at 507 (citations and quotations omitted).

In matters pertaining to the conditions of the jail and to the operation of the deputies, the sheriff is the policymaker for the county. Mich. Comp. Laws § 51.75 (sheriff has the "charge and custody" of the jails in his county); Mich. Comp. Laws § 51.281 (sheriff prescribes rules and regulations for conduct of prisoners); Mich. Comp. Laws § 51.70 (sheriff may appoint deputies and revoke appointments at any time); *Kroes v. Smith*, 540 F. Supp. 1295, 1298 (E.D. Mich. 1982) (the sheriff of "a given county is the only official with direct control over the duties, responsibilities, and methods of operation of deputy sheriffs" and thus, the sheriff "establishes the policies and customs described in *Monell*"). Thus, the court looks to the allegations in Plaintiff's complaint to determine whether Plaintiff has alleged that the sheriff has established a policy or custom which caused Plaintiff to be deprived of a constitutional right.

Plaintiff has not asserted that an official policy or custom led to each of his injuries. Specifically, Plaintiff did not allege that an official policy or custom resulted in the deprivation of adequate medical care. Instead, Plaintiff merely implies the County is responsible for the actions of its sheriff department employees in these claims. In other words, Plaintiff relies solely on a theory of respondeat superior, which fails to state a claim under § 1983. *Monell*, 436 U.S. 658, 691.

Where a plaintiff fails to allege that a policy or custom existed, dismissal of the action for failure to state a claim is appropriate. *Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987); *see also Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation). Therefore, the Court will dismiss Defendant Berrien County from Plaintiff's

Fourteenth Amendment deprivation of adequate medical care claims because Plaintiff has failed to state a claim upon which relief may be granted.

### IV. Respondeat Superior

Likewise, Plaintiff fails to make specific factual allegations against Defendant Bailey for denying adequate medical care related to Plaintiff's broken tooth. Plaintiff alleges only that Defendant Bailey denied Plaintiff's grievance on appeal. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Bailey engaged in any active behavior denying treatment for Plaintiff's tooth. The Complaint alleges only that Defendant Bailey denied Plaintiff's grievance on appeal. Accordingly, Plaintiff fails to state a claim against Defendant Sheriff Bailey for the denying Plaintiff dental treatment.

7

## V. Fourteenth Amendment

Plaintiff alleges claims arising under the Fourteenth Amendment that he was denied access to the courts, that he was denied medical care, and that his books were taken without compensation or due process.

### A. Deprivation of Adequate Medical Care

Plaintiff arguably alleges two separate claims that Defendants deprived him of adequate medical care when he was denied repairs to his broken tooth and when he did not receive his prescribed medications. As discussed above, however, both Defendants have been dismissed from the claim related to Plaintiff's broken tooth leaving only Plaintiff's claim that he was denied his prescription medication.

In *Kingsley v. Hendrickson*, 576 U.S. ___, 135 S. Ct. 2466 (2015), the Supreme Court held that the use of excessive force on pretrial detainees is measured under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment, which applies to convicted prisoners. The Court held that the subjective prong of the Eighth Amendment deliberate indifference standard did not apply to the pretrial detainees in excessive force cases, instead, the relevant inquiry is whether the force purposely or knowingly used against the prisoner was objectively unreasonable. *Id.* at 2473-74; *see also Coley v. Lucas Cty.*, 799 F.3d 530, 538 (6th Cir. 2015) (citing *Kingsley*). In *Richmond v. Huq*, 885 F.3d 928 (6th Cir. 2018), the Sixth Circuit declined to decide whether, in the context of a failure to provide medical care, *Kingsley* eliminated the requirement of proving the subjective prong of the deliberate indifference test for pretrial detainees under the Fourteenth Amendment. *Id.* at 938 n.3. As a consequence, the two-pronged deliberate-indifference standard found under the Eighth Amendment continues to apply to medical claims by pretrial detainees.

The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Here, Plaintiff alleges that "Defendants have refused" to give Plaintiff all of his prescribed medications. (Compl., ECF No. 1, PageID.5.) The allegation fails to address Defendant Bailey's precise role in refusing Plaintiff his medications. Yet, the Complaint alleges direct conduct. Thus, upon initial review, the Court concludes that Plaintiff's allegations are sufficient to state a Fourteenth Amendment claim against Defendant Bailey for denying Plaintiff his prescribed medications.

### B. Access to the Court

Plaintiff has alleged that he has been denied access to the courts, both defending his criminal charges and in the instant civil rights action, on two bases. First, Plaintiff alleges that while he was detained in Berrien County jail, he was restricted to three stamps per week and was not provided a pen or manila envelope unless he could pay. Plaintiff further asserts that Defendants refused to provide documentation and certification necessary so that Plaintiff could move the Court for leave to proceed *in forma pauperis* in the instant case.

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824-28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and

missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578 (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff has utterly failed to show any injury he has sustained in his litigation resulting from the limitations on stamps, envelopes, and pens, or due to Defendants' refusal to assist Plaintiff's motion for leave to proceed *in forma pauperis*. The Court granted Plaintiff's request to proceed as a pauper (ECF No. 4) despite any alleged refusal by Defendants to provide assistance. Likewise, Plaintiff filed his Complaint with the Court—notwithstanding any limitations on stamps, envelopes, and pens—without suffering dismissal or missing any deadlines. Thus, not only did Plaintiff fail to allege any injury, but no injury to the instant federal case is apparent.

Similarly, Plaintiff has not alleged any injury to his criminal defense. Moreover, in his Complaint, Plaintiff listed several individuals presumably connected to his criminal proceeding. (Compl., ECF No. 1, PageID.5 ("I can write 3 letters a week and I must choose whether I write . . . my Aty. James Jesse, Prosecutor Victor Fitz, Judge Herman[, and] Cass Co. Law & Courts . . . .").) Presumably, James Jesse was Plaintiff's counsel in his criminal case. An inmate's right of access to the courts is fully protected if he is represented by counsel. *Skelton v. Pri–Cor, Inc.*, 963 F.2d 100, 104 (6th Cir. 1991); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.

1984); *Holt v. Pitts*, 702 F.2d 639, 640 (6th Cir. 1983). *Cf. United States v. Sammons*, 918 F.2d 592, 602 (6th Cir. 1990) (defendant's waiver of right to court-appointed counsel and decision to represent self in defense of criminal prosecution constituted waiver of right of access to law library). Plaintiff was represented by counsel in his criminal case. Plaintiff, through his counsel, had ample access to the criminal court, Prosecutor Fitz, and Judge Herman. Again, not only did Plaintiff not allege an injury, but his right of access to the courts in his criminal proceeding were adequately protected through his representation by counsel.

Because Plaintiff has not alleged any injury resulting from Defendants' interference with his access to the courts, Plaintiff has failed to state a viable claim. Therefore, the Court will dismiss Plaintiff's access-to-the-court claims for failure to state a claim.

### C. Deprivation of Property without Due Process

Plaintiff has arguably alleged that Defendants Sheriff Bailey and Berrien County have deprived him of his property without due process when the Sheriff ordered deputies to take Plaintiff's books. To the extent Plaintiff alleges a claim of deprivation of his property without due process, Plaintiff's claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). The *Parratt* court further recognized that meaningful post-deprivation remedies "can satisfy the requirements of procedural due process" where the State is faced with "either the necessity of

quick action . . . or the impracticality of providing any meaningful predeprivation process." *Id.* at 539; *see also Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995) ("a post-deprivation or common-law tort remedy may be constitutionally adequate where pre-deprivation process is impractical") (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982)).

Plaintiff asserts that his dorm was clear of bed bugs and therefore officials were "overzealous" for removing his books. (Compl., ECF No. 1, PageID.3-4.) He does not dispute that quick action was necessary to abate a bed bug issue in the jail nor does he allege that a pre-deprivation process was practical. *See Hudson*, 468 U.S. 539. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. *See id.*; *see also Copeland*, 57 F.3d at 479-80. Notwithstanding Plaintiff's omission, "Michigan [state law] provides several adequate post-deprivation remedies, including Michigan Court Rule 3.105 that allows an action for claim and deliver, [and] Mich. Com. Laws § 600.2920 that provides for a civil action to recover possession of or damages for goods and chattels unlawfully taken or detained." *Copeland*, 57.F.3d at 480. The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See id.* Thus, Plaintiff has failed to sustain his burden that he was deprived of property without due process.

Under settled Sixth Circuit authority, a prisoner's failure to sustain his burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985). Accordingly, Plaintiff's due process claim will be dismissed.

### VI. Free Exercise under the First Amendment

Plaintiff alleges that, due to Defendants' policy, his religious books were taken hindering him from practicing as a Seventh Day Adventist.

13

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Plaintiff has sufficiently alleged his sincerely-held religious beliefs. The next consideration is "whether the challenged practice of the prison officials infringes on the religious belief . . . ." *Kent*, 821 F.2d at 1224-25. A practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief or practice . . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir. 2015) (McKeague, J., dissenting) ("To violate the First Amendment, the diet must impose a substantial burden on the inmate's exercise of religion.").

"[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736. "'[A] 'substantial burden' must place more than an inconvenience on religious exercise.'" *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult . . . ." *Id.*

14

Plaintiff alleges that the removal of his books to abate the bed bug concern "keep[s] [Plaintiff] from practicing [his] sincerely held religious belief" because he "ha[s] no way to practice [his] religion except by reading [his] Bible, doing Bible studies and reading 7 day Adventist books by Ellen White." (Compl., ECF No. 1, PageID.3-4.)

Prison officials may impinge on these constitutional rights where their actions are "reasonably related to legitimate penological interests." *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). That inquiry, however, is fact-intensive and not amendable to resolution at this stage of the proceedings. Thus, upon initial review, the Court concludes that Plaintiff's allegations are sufficient to state a First Amendment Free Exercise claim against Defendants Berrien County and Sheriff Bailey.

### VII. RLUIPA

Plaintiff alleges Defendants violated his rights under RLUIPA. Because Plaintiff seeks only money damages, which RLUIPA does not permit, his claim will be dismissed.

RLUIPA applies to prisons and jails that receive federal funds and prohibits state and local governments from placing "a substantial burden" on the "religious exercise" of any inmate unless they establish that the burden furthers a "compelling governmental interest" and does so in the "least restrictive" way. 42 U.S.C. § 2000cc–1(a). To establish a cognizable claim under RLUIPA, the inmate must first demonstrate that a prison policy substantially burdens a religious practice. So long as the practice is traceable to a sincerely held religious belief, *see Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005), it does not matter whether the inmates' preferred exercise is "central" to his faith, 42 U.S.C. § 2000cc–5(7)(A). Once an inmate makes this showing, the prison policy survives only if it serves a compelling governmental interest in the least restrictive way. *Id*. § 2000cc–1(a); *see also Haight v. Thompson*, 763 F.3d 554, 559-60 (6th Cir. 2014).

15

Although the statute permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), monetary damages are not available under RLUIPA. In *Sossamon v. Texas*, 563 U.S. 277 (2011), the Supreme Court held that the RLUIPA did not abrogate sovereign immunity under the Eleventh Amendment. *See also Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA."). The Sixth Circuit interpreted *Sossamon* to preclude money-damages claims against state officials in their individual capacities as well. *Haight*, 763 F.3d at 568. But its analysis extends to county and municipal governments and to their officials.

The Sixth Circuit reasoned that, because Congress invoked authority under the Spending Clause to pass RLUIPA, the clear-statement rule applies to "appropriate relief." *See id.* That is, "[c]larity is demanded . . . whether related to waivers of sovereign immunity or not." *Id.* (citing *South Dakota v. Dole*, 483 U.S. 203, 206-07 (1987)). "'[L]egislation enacted pursuant to the spending power is much in the nature of a contract' and therefore, to be bound by 'federally imposed conditions,' recipients of federal funds must accept [the conditions] 'voluntarily and knowingly.'" *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)); *see also Haight*, 763 F.3d at 568-70. Thus, a county or municipality subjected to RLUIPA as a condition for receiving federal funds benefits from the protections offered by the clear-statement rule. Consequently, because the Sixth Circuit has determined "'appropriate relief' does not clearly create a money-damages action," *Haight*, 763 F.3d at 568 (citing *Sossamon*, 563 U.S. at 286-87), a money-damages action cannot be sustained against counties or municipalities.[2]

---

[2] The Sixth Circuit, however, diverges from several of its sister circuits. *See Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 290 (5th Cir. 2012) ("[M]oney damages are available under RLUIPA against political subdivisions of states, such as municipalities and counties."); *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1169 (9th Cir. 2011) ("The City of Yuma, therefore, may be liable for monetary damages under

16

Moreover, a plaintiff cannot use § 1983 to get damages that RLUIPA does not provide. While § 1983 authorizes individuals to sue to enforce both the "rights, privileges, or immunities secured by the Constitution *and laws*," *id.* (emphasis added), the question whether § 1983 allows a person to enforce a federal statute turns on "whether Congress intended to create an 'individually enforceable right' and whether Congress wanted the statute to provide the exclusive remedy." *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 460 (6th Cir. 2019) (quoting *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120–21 (2005)). The Sixth Circuit squarely has held that, because RLUIPA creates an individually enforceable right and an express cause of action that precludes damages, the statute demonstrates a congressional intent to preclude using § 1983 as a back door to such damages. *Id.*

Thus, because Plaintiff seeks only damages, which the Court cannot grant, he fails to state a claim for relief. Accordingly, the Court will dismiss Plaintiff's RLUIPA claim for failure to state a claim upon which relief may be granted.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court will dismiss, for failure to state a claim: Plaintiff's Fourteenth Amendment deprivation of property without due process, access to the courts, and deprivation of medical care for failure to repair his tooth claims; Plaintiff's RLUIPA claim; and Defendant Berrien County from Plaintiff's deprivation of medical care claim for denying medication. *See* 28 U.S.C. §§ 1915(e)(2) and

---

RLUIPA."); *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 273 (3d Cir. 2007) (remanding an RLUIPA claim against a city to determine compensatory damages); *Perfetto v. Plumpton et al.*, No. 14-cv-556, 2016 WL 3647852 (D.N.H. July 1, 2016). Indeed, notwithstanding its holding in *Haight*, the Sixth Circuit remanded at least one RLUIPA claim seeking money damages to a district court holding that the money-damages claim was neither moot due to a preliminary injunction nor abandoned. *See Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 366 (6th Cir. 2018) ("Tree of Life has not abandoned its money-damages claim; nor did the district court's permanent injunction moot it."). As a consequence, the validity of the holding in *Haight* as applied to municipalities is questionable. Nevertheless, because *Haight* is controlling authority, and its reasoning does not exclude municipalities, the Court applies it here.

1915A(b), and 42 U.S.C. § 1997e(c).  Plaintiff's First Amendment Free Exercise claim remains in the case, as does his Fourteenth Amendment claim of deprivation of medical care for denying medication against Defendant Bailey.

An order consistent with this opinion will be entered.

Dated:  December 31, 2019         /s/ Robert J. Jonker
                                  ROBERT J. JONKER
                                  CHIEF UNITED STATES DISTRICT JUDGE