UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON RICHARD EIDAM #266232,

    Plaintiff,                                            Hon. Robert J. Jonker

v.                                                       Case No. 1:19-cv-978

COUNTY OF BERRIEN, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

      The Court has before it Defendants' Motions for Summary Judgment. (ECF Nos. 55 and 59.) Plaintiff has failed to respond to the motions within the time permitted by Western District of Michigan Local Civil Rule 7.2(c). Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that both motions be **GRANTED**, and that Plaintiff's complaint be dismissed with prejudice.[1]

**I. Background**

      Plaintiff filed his complaint in this case on November 18, 2019, against the County of Berrien and Sheriff L. Paul Bailey alleging various claims based on incidents that occurred while Plaintiff was housed at the Berrien County Jail as a pretrial detainee between August and October 2019. Plaintiff subsequently filed an amended complaint adding additional Defendants. (ECF No. 13.) Plaintiff's remaining claims are: (1) Fourteenth Amendment denial-of-medical-care claims against Unknown Intake Nurse and Defendant Bailey; and (2) First Amendment free-exercise

---

[1] Because Plaintiff has failed to respond and Defendants' briefs adequately develop the issues, I conclude that oral argument is unnecessary.

claims against Defendants Bailey, Unknown Lange, Unknown Hyun, and the County. (ECF No. 53.)

### A. Facts Regarding Denial of Medication

On August 8, 2019, Plaintiff was arrested by City of Niles police officers for assault/resisting and obstructing a police officer. (ECF No. 59-2 at PageID.296.) During the intake process at the City of Niles Police Department, Plaintiff reported that his current medications that he was carrying or should be given continuously included "psych meds, lithium, effoxir (sic), gabipentum (sic), [and] colonopin (sic)," for "claimed PTSD, [b]ipolar 1, ADHD, [and] [a]nxiety." (*Id.* at PageID.297.) On August 9, 2019, Kelly Anderson, R.N. (Unknown Nurse), completed the intake screening for Plaintiff at the Berrien County Jail. She noted that Plaintiff's medical history included chronic back pain, bipolar 1, PTSD, and ADHD. She also noted that he used Walgreens as his pharmacy and was taking Klonipin, Lithium, Effexor, Gabapentin, and Suboxone. Plaintiff reported current use of psychotropic medications, history of psychiatric hospitalization, and history of outpatient mental health treatment. R.N. Anderson referred Plaintiff for a mental health evaluation. (*Id.* at PageID.318–24.) The same day, R.N. Thomas contacted P.A. Morrison and arranged for Plaintiff to receive Effexor and Lithium, but no Gabapentin "at this time." Later in the day, another nurse contacted P.A. Morrison with a telephone order for Medrol for inflammation, which P.A. Morrison approved. (*Id.* at PageID.325–26.)

R.N. Anderson called Walgreens to verify Plaintiff's medications, which included Prednisone, Clonazepam, Effexor, Gabapentin, and Lithium. She emailed the list to Dr. Fatoki. (*Id.* at PageID.328–29.) R.N. Anderson updated Plaintiff's chart to note that he was placed on withdrawal protocols for Suboxone and Clonazepam from August 9 to August 14, 2019. Over that period of time, Plaintiff exhibited mild symptoms and had withdrawal scores of 12/13 or less. (*Id.* at PageID.342, 347–451.)

Plaintiff signed consent forms for Effexor and Lithium and was placed on medication cart call out. (*Id.* at PageID.328, 454–55.) Plaintiff refused several visits with the psych provider. (*Id.* at PageID.327, 453.)

Sarah Patrick, M.A., M.H.P., saw Plaintiff on August 9, 2019, for an initial mental health evaluation. She noted that Plaintiff had a mental health history and was medication compliant. A behavioral health follow up was planned. (*Id.* at PageID.313–17.) In August 2019, Plaintiff sent healthcare requests relating to his mental health. However, when called out, he refused to see Ms. Patrick. (*Id.* at PageID.330–31; *Id.* at PageID.334–41.) Plaintiff filed a grievance stating that he wanted to see the psychiatrist and would not see Ms. Patrick for his concerns about his medication. Plaintiff was informed that the doctor reviews his records and starts medications at the jail, as needed. (*Id.* at PageID.332–33.) Plaintiff's records show that while he was at the jail, he took all of his prescribed Lithium and almost all of his prescribed Effexor. (*Id.* at PageID.343–46.)

### B. Facts Regarding Confiscation of Plaintiff's Religious Materials

Plaintiff alleged that on October 22, 2019, Deputies Lange and Ertman went to Dorm 2E and told the prisoners that Defendants Hyun and Bailey ordered them to take all books, Bibles, Bible study books, and Plaintiff's Sudoku book because books were a good hiding place for bed bugs. Plaintiff alleged, however, that the day before, the pest control company brought in a bed bug sniffing dog and Dorm 2E was clear of bugs. (ECF No. 1 at PageID.3–4.) Plaintiff claimed that, although the chaplain brought him a new Bible, it had small print and he could not read it. (*Id.* at PageID.5.)

Defendants Bailey, Lange, Hyun, and the County have presented evidence showing that the bed bug infestation was worse than Plaintiff indicated in his complaint. The infestation was discovered on September 9, 2019. At that time, the County hired a pest control company to eradicate the infestation in Dorm 2K. (ECF No. 57-1.) Unfortunately, a second infestation was

3

found on October 14, 2019. (ECF No. 57-2.) A canine trained to detect bed bugs found infestations in ten dorms, the jail library, and a bag in the women's property room. (ECF No. 57-3.) On October 21, the jail adopted a policy to remove all books and magazines, including Bibles, from the jail facility. (ECF No. 57-4.) The jail made efforts to replace Bibles that were taken from prisoners. On October 29, 2019, Plaintiff received a replacement Bible. However, he was still asking for one on October 30, 2019. (ECF No. 57-6.) Plaintiff was transferred to the Cass County Jail on November 12, 2019, for reasons unrelated to this action. (ECF No. 57-7.)

## II. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Generally, where the non-moving party fails to respond to a motion for summary judgment, "the district court must, at a minimum, examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden." *Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005) (citing *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998)).

4

### III.   Discussion

#### A.   Denial of Medications

Plaintiff alleges that Defendant Unknown Intake Nurse, identified on the intake form as R.N. Anderson, and Defendant Bailey denied him his prescription medications every day for 120 days.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Punishment that is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). In other words, the Eighth Amendment prohibits "the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

The unnecessary and wanton infliction of pain encompasses "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001). Determining whether denial of medical care amounts to an Eighth Amendment violation involves two steps. First, the court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need" sufficient to implicate the Eighth Amendment is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Thus, the objective component is satisfied where a prisoner receives no treatment for a serious medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-

obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier*, 238 F.3d at 742 (internal quotation marks omitted).

If the plaintiff satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837 (1994). *Id.* at 837. In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847). To satisfy this part of the analysis, the plaintiff must demonstrate that the defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005).

Where a denial-of-medical care claim is asserted on behalf of a pretrial detainee, the claim is analyzed under the Due Process Clause of the Fourteenth Amendment. *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566–67 (6th Cir. 2020) (citing *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018)). Although the Supreme Court has eliminated the subjective prong of excessive force claims by pretrial detainees under the Due Process Clause, *see Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Sixth Circuit continues to apply "the same 'deliberate indifference' framework" to denial-of-medical-care Fourteenth Amendment claims by pretrial detainees that applies to Eighth Amendment claims by convicted prisoners. *Id.* at 567; *see also McCain v. St. Clair Cnty.,* 750 F. App'x 399, 403 (6th Cir. 2018); *Medley v. Shelby Cnty.,* 742 F. App'x 958, 961 (6th Cir. 2018).

As an initial matter, Plaintiff's claim against Defendant Bailey fails because Plaintiff has offered no evidence that Defendant Bailey was involved in the alleged denial of his medications. It is well established that the doctrine of respondeat superior does not apply in Section 1983 actions to impute liability to supervisory personnel. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691–95 (1978). There is no evidence that Defendant Bailey was involved in any way in Plaintiff's medical care. To the extent that Plaintiff intended to allege that Defendant Bailey is liable under a theory of supervisory liability, such claim fails because Plaintiff has presented no evidence that Defendant Bailey condoned or otherwise approved of the alleged denial of medical care. *See Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Plaintiff's claim against R.N. Anderson—the Unknown Intake Nurse—fails on the objective prong of Plaintiff's claim. Here, the evidence shows that R.N. Anderson recorded Plaintiff's medical history, medications, and mental health history. She also referred Plaintiff for a mental health evaluation and called Walgreens to verify Plaintiff's prescriptions. Another nurse contacted the on-call provider to ensure that prescriptions were ordered for Plaintiff. Plaintiff was prescribed Effexor and Lithium and placed on a withdrawal protocol for his other medications. This is not a situation in which Plaintiff received no treatment at all for his mental health conditions. Thus, Plaintiff was required to "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (quoting *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001)). Plaintiff offers no evidence satisfying this requirement. Therefore, summary judgment is properly granted on this claim.

Plaintiff's claim fails on the subjective component as well. Nothing in the record shows that R.N. Anderson knew of and disregarded "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

### B.     Confiscation of Religious Materials

Plaintiff alleges that Defendants Bailey, Lange, Hyun, and the County violated his First Amendment right to freely exercise his religion by confiscating his religious materials. It is well established that a prisoner does not forfeit all of his constitutional rights, including his right to free exercise of religion. *See Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972) (stating that "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty"). On the other hand, it is well established that incarceration legitimately requires restrictions on many rights and privileges that prisoners retain. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

> [S]uch a standard is necessary "if prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations." *Jones v. North Carolina Prisoners' Union*, 433 U.S. [119,] 128, 97 S. Ct. [2532, 2539 (1977)]. Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and adopt innovative solutions to the intractable problems of prison administration. The rule would also distort the decision making process, for every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand. Courts inevitably would become the primary arbiters of what constitutes the best solution to every administrative problem, thereby "unnecessarily perpetuat[ing] the involvement of the federal courts in the affairs of prison administration." *Procunier v. Martinez*, 416 U.S. [396], 407, 94 S. Ct. [1800, 1808 (1974)].

*Turner v. Safley*, 482 U.S. 78, 89 (1987).

In *Turner*, the Court articulated four factors to assess the reasonableness of a prison regulation: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means

of exercising the right that remain open to prison inmates; (3) what impact that accommodation of the asserted constitutional right will have on other guards and inmates; and (4) whether there are other readily available alternatives at a *de minimis* cost to valid penological interests. *Id.* at 89–91. Regarding these factors, Defendants have presented evidence that, after the initial bed bug infestation that Plaintiff references in his complaint was addressed, a second, more widespread infestation was discovered. Subsequently, a canine trained to detect bed bugs found a major infestation in the library and ten jail dormitories. Because books were a major source of the infestation, the representative from the pest control company advised jail personnel that removing all books and reading materials was the most effective way to eradicate the bugs from the jail. (ECF No. 57-12 at PageID.258.)

Application of the *Turner* factors in this case shows that Defendants' removal of all books, including Plaintiff's Bible and other religious materials, was a reasonable response to the issues posed by the bed bug infestation. First, the removal of books from the jail was rationally connected to addressing the bed bug problem that was present in the jail facility. Eradication of the bed bug infestation was a legitimate concern for jail officials because it could have led to health issues and unrest among the inmates. Given the scope of the infestation, and the need to address the problem throughout the facility, Defendants' solution to the problem was reasonable. Regarding the second factor, although jail officials confiscated Bibles and other religious materials, they made reasonable efforts to provide replacement Bibles as soon as practicable after the existing books were confiscated. Although Plaintiff was not happy with his replacement Bible, the deprivation was only temporary, and Plaintiff still possessed the religious material he claims he needed. The third factor assesses the impact on other prisoners and guards. Allowing the bed bug problem to fester undoubtedly would have affected both prisoners and guards. Finally, there is no indication

9

that ready alternatives were available to jail officials at *de minimis* cost. The policy at issue—removing *all* books and reading materials and providing replacement Bibles to prisoners who wanted them as soon as possible—struck a reasonable balance between the governmental interests at stake and the inmates' free exercise rights. *See Meadows v. Hopkins*, 713 F.2d 206, 210–11 (6th Cir. 1983).

Therefore, Plaintiff fails to demonstrate a violation of his First Amendment free exercise rights. Accordingly, Defendants are entitled to summary judgment on this claim.[2]

## IV. Conclusion

For the reasons set forth above, I recommend that the Court **GRANT** Defendants' motions for summary judgment (ECF Nos. 55 and 59) and dismiss Plaintiff's complaint with prejudice.

Dated: May 18, 2021 /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

---

[2] Because I conclude that Plaintiff's claim fails on the merits, there is no need to address Defendants' argument that Plaintiff's claims against Defendant Bailey and the County are duplicative.